IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04-3254 |
| ) | |
| FOUR THOUSAND SEVEN ) | |
| HUNDRED NINETY DOLLARS ) | |
| AND 00/100 DOLLARS ($4,790.00) ) | |
| IN U.S. CURRENCY, ) | |
| ) | |
| Defendant. ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This case is before the Court following a bench trial. After carefully considering all of the evidence, the Court makes the following findings of fact and conclusions of law.

## BACKGROUND

This is a civil in rem forfeiture action pursuant to 21 U.S.C. § 881(a)(6) filed by the United States of America seeking to forfeit $4,790.00 in United States Currency. The Government alleges that the Defendant currency was money furnished or intended to be furnished in exchange for

1

a controlled substance in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, et seq., or constituted proceeds traceable to such an exchange. David Lacy has filed a claim asserting an interest in the Defendant currency alleging that the currency is his and that it is not the proceeds of illegal drug transactions. Lacy claims to be an innocent owner as defined by 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 983(d). The parties agree that many of the relevant facts are uncontested.

## FINDINGS OF FACT

The Court makes the following findings based on the undisputed facts jointly submitted by the parties in the final pretrial order: On or about July 16, 2004, law enforcement agents received information from a confidential informant that Antwain Brown was in Springfield, Illinois, to distribute cocaine. As a result of this information, they proceeded to take action by setting up surveillance on Brown. Agents of the DEA followed Brown and another individual to various locations in Springfield, Illinois, including 822 Allen Street.

On July 16, 2004, Drug Enforcement Administration (DEA) agents observed Brown and a person later identified as Jason Davis exit the residence at 822 Allen Street and place a dark colored bag in the trunk of

2

a rented red 2004 Nissan. Agents determined that the red 2004 Nissan was rented from Enterprise Rental Company. After putting the bag in the trunk of the red 2004 Nissan, both individuals entered the car and departed the area. Brown was driving.

Agents followed the Nissan northbound on Interstate 55 to Lincoln, Illinois. On July 16, 2004, at approximately 2:35 p.m., an Illinois State Police officer stopped the Nissan at mile marker 129 (north) for an improper U-turn. A K-9 unit was called to the scene. The K-9 alerted law enforcement to the presence of narcotics on the Nissan.

Upon searching the vehicle, law enforcement officers found a dark carrying bag located in the trunk. Inside the dark carrying bag was a shaving kit, and inside the shaving kit, officers found the Defendant currency. The currency was wrapped in a white wash cloth and bundled with a green rubber band. The currency was in denominations of $100's, $50's, $20's, $10's and $5's. Also found in the dark carrying bag was a one pound bag of green rubber bands. Also found in that bag was a full box of clear plastic sandwich bags. The officer also found the following items in the dark carrying bag: one unopened package of telephone ear plugs, new t-shirts, one large pair of used blue jeans, 10 Durex brand condoms, one

plastic bag containing infant's clothing, one hotel-style bath towel, one hotel-style wash cloth and miscellaneous shaving and bathroom articles inside the shaving kit bag. During the search of the 2004 Nissan, no drugs were discovered.

On July 19, 2004, Claimant David Lacy contacted the Illinois State Police and claimed that the currency seized from Antwain Brown three days earlier was his. Lacy also claimed that the bag belonged to him. On July 19, 2004, Lacy was interviewed by officers with the Illinois State Police. According to Lacy, on the morning of July 16, 2004, he had been drinking at a local bar and then at an apartment located at 2715 South MacArthur, Springfield, Illinois, where he lived with his girlfriend. Lacy and his girlfriend, Rosia Strickland, got into a fight. Lacy stated that he then called Jason Davis, his son, for a ride. Upon Davis' arrival, Lacy placed the bag containing "approximately $5,000.00" in the trunk of the car without Davis knowing it.

Lacy was questioned about the contents of the bag; he was unable to identify all of the items contained in the bag. Lacy also stated that he did not own a cell phone at the time and did not then have children or grandchildren of infant ages. Lacy also stated that "the approximately

$5,000 in currency was mostly in $100's." When asked if he was sure, Lacy then stated that the currency contained other denominations, including $100's, $50's, $20's, $10's, $5's and $1's. Lacy stated that Davis had returned the bag to him on July 16, 2004, and the bag contained a pair of jeans, a shirt and deodorant. Lacy stated that he works periodically as a carpenter and does not keep his money in a bank.

The Court further finds facts, as set forth below, from the evidence presented at trial:

Agent Scott Giovannelli of the DEA testified that information pertaining to Antwain Brown was received from a confidential informant. Based on this information, on July 16, 2004, Giovannelli and other agents set up surveillance. Brown was observed in a red Nissan in the parking lot of a dentist's office. The agents followed the vehicle when it left the parking lot. At some point, they lost the vehicle. It was found at 822 Allen Street. Agent Giovannelli testified that he observed two males placing a dark colored bag in the trunk of the Nissan and leaving that address at 1:46 p.m.

The surveillance of the vehicle then continued. The occupants were observed stopping at the Wendy's on Clear Lake Avenue in Springfield, and then traveling north on I-55. The vehicle was followed and stopped in

5

Lincoln, Illinois, for a traffic violation. Trooper Rick Price testified that Brown and Davis appeared to be nervous. Moreover, one or both of the occupants informed Trooper Price that they had been to the Wendy's in Lincoln, even though the receipt from Wendy's (and the observation of surveillance officers) indicated they had been to Wendy's at a Springfield location. According to Price, Brown appeared to be somewhat agitated and was wondering why they had been stopped.

Another unit arrived to assist Trooper Price. The officers determined that the red Nissan had been rented by a female and that although Brown was driving, only Davis was authorized to drive. The officers also found that both Davis and Brown had a history of drug activity. The occupants denied that there was anything illegal in the vehicle and consented to a search. A canine unit arrived, and the dog alerted to the right rear trunk area of the car.

A dark colored duffel bag was found in the trunk. While no drugs or drug paraphernalia was found, officers described some of the contents of the bag--such as rubber bands, sandwich bags, and the large amount of money--as indicators of drug activity. Davis and Brown both denied ownership of

the bag. Neither individual admitted knowing whose bag it was.[1]

Lacy testified that he is a carpenter who performed various jobs and that the Defendant funds constituted money that he had earned as a carpenter. On July 16, 2004, according to his testimony, Lacy went to a local bar and started drinking at 8:30 or 9:00 a.m. after leaving the union hall. Based on his testimony, he got home around noon and continued drinking. At some point in the afternoon, Lacy said he had a fight with his girlfriend while talking to her on the phone. Rosia Strickland told Lacy that he was not to be at home when she returned from work. Strickland and Lacy testified that this was not an uncommon occurrence when Lacy had been drinking. Lacy testified that he called his son and asked for a ride to his sister's house. While he was unsure of the time, Lacy speculated that it was a little after noon. Lacy testified that it took a while for his son to arrive and that he kept drinking while waiting.

While waiting for his son, Lacy testified that he placed various items that were on the table in the duffel bag. Lacy stated that at the time, he did

---

[1] Since Davis denied knowing who owned the bag, it is unclear why the bag was ever returned to him. According to the testimony, however, the bag and its contents, except for the Defendant currency, were returned to Davis. Davis then gave the bag to Lacy.

7

not know what he placed in the bag, except for some clothes and the money. Moreover, he stated that when he made money, he always put it in that bag and put a rubber band around it. When Davis arrived, Lacy put the bag in the trunk of the grey car that Davis was driving.[2] According to Lacy, Davis drove Lacy to his sister's house at 1115 N. 5th Street, where Lacy states that he forgot to remove the bag from the car. Lacy testified that Davis and his friend, whom he identified only as "Brown," stayed at that location for a while before they left.

Rosia Strickland testified that the phone call with Lacy, when they argued, took place between 2:00 and 4:00 p.m. Rosia Strickland also testified that she and Lacy have been together for ten years. In July 2004, the two lived together and shared expenses. Strickland testified that she often took Lacy's money and that she was familiar with his usual hiding places. According to Strickland, Lacy's money was typically kept in the underwear drawer, clothes pockets, the top of the dresser, or under items in the closet. Strickland did not mention the duffel bag, even though Lacy had stated that he often hid his money in the bag.

---

[2] Agent Giovannelli testified that the informant had also rented a silver vehicle for Brown to use while in Springfield.

The Court finds Ms. Strickland to be more credible than Mr. Lacy in recalling the time of the phone call on July 16, 2004, during which they argued. She stated the time of the call was between 2:00 p.m. and 4:00 p.m. In making this credibility finding, the Court relies on the fact that Ms. Strickland was sober, at work, and Mr. Lacy had been drinking since 9:00 - 9:30 a.m. that day. His recollection of the time was less precise than Ms. Strickland's, and she repeatedly emphasized that she wanted him to leave before she got home from work. She was upset that day about his drinking. The Court further notes that Ms. Strickland's demeanor at trial was that of a witness who was trying to help Lacy, not harm his chances of success. She was called as a witness by Lacy. The Court, thus, finds that the time of their phone conversation was between 2:00 - 4:00 p.m.

## CONCLUSIONS OF LAW

The relevant portion of the applicable statute provides for the forfeiture to the Government of "All moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or . . . all proceeds traceable to such an exchange." 21 U.S.C. § 881(a)(6). The Government alleges that there is a substantial connection between the Defendant currency and drugs and that the property is therefore subject to

9

forfeiture under the statute.

"An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d)(1). Lacy contends that, pursuant to § 983(d)(2)(A), he is an "innocent owner" in that he "(i) did not know of the conduct giving rise to the forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." Lacy contends that he is the owner of the subject currency.

"Civil forfeiture standards are now subject to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983(c)(1)." United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670.00), 403 F.3d 448, 454 (7th Cir. 2005). The Government must establish by a preponderance of the evidence that the property sought is subject to forfeiture. Id. (citing § 983(c)(1)). Section 983(c)(3) provides that "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that

there was a substantial connection between the property and the offense."

After the Government presented its evidence at trial, Lacy orally moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). In denying the motion, the Court concluded that the Government had put on a prima facie case that there was a substantial connection between the money and drug activity. Based on all of the circumstances now presented and the totality of the evidence presented at trial, the Court now concludes that the Government has established by a preponderance of the evidence that the Defendant currency is money furnished or intended to be furnished in exchange for a controlled substance, or represents the proceeds of said exchange. The Government has demonstrated that there is a substantial connection between the money and drugs. In making this determination, the Court relies primarily on the observations of Agent Giovannelli, the use of a rental car that had been rented by a third party, the apparent nervousness and criminal histories of Brown and Davis, the inaccuracy in their statements concerning where they had purchased food, the dog alert, (which has generally been deemed entitled to probative weight, <u>Funds in the Amount of $30,670.00</u>, 403 F.3d at 460), the presence of certain items in the carrying bag that could be

11

described as indicators of drug activity--such as rubber bands and plastic bags--which were found with the large amount of money, and the failure of Brown and Davis to claim ownership of the bag or to state at that time that they knew whose it was.

Significantly, the Government need not trace the money to a particular drug transaction. United States v. Funds in the Amount of $9,800, 952 F.Supp. 1254, 1260-61 (N.D Ill. 1996), (citing United States v. U.S. Currency, in the Amount of $150,660.00, 980 F.2d 1200, 1205 (8th Cir. 1992)). While the burden of proof has changed since Funds in the Amount of $9,800 was decided, the statute still does not require the Government to trace the proceeds to a particular drug transaction. Id. See 18 U.S.C. § 983(c), see also Funds in the Amount of $30,670.00, 403 F.3d at 469 (noting the fact that the claimant was not criminally charged was of little consequence when considering the totality of circumstances).

The Court further concludes that, pursuant to 18 U.S.C. § 983(d)(1), Lacy has failed to prove by a preponderance of the evidence that he is an innocent owner of the money. Lacy's testimony demonstrated that it would not have been unusual for him to be in possession of large sums of money. This is based on the amount of money Lacy made as a carpenter and his

testimony that he did not use banks because he did not read very well. However, Lacy's assertion that the subject currency belongs to him is weakened by the inconsistencies between his testimony and that of his girlfriend. As noted above, the Court found Ms. Strickland's testimony that she argued by phone with Lacy between 2:00 - 4:00 p.m. on the day in question credible. However, Agency Giovannelli observed Brown and Davis place the carrying bag in the trunk of the red Nissan, at an address other than where Lacy lived with Ms. Strickland, at 1:46 p.m.-- well before Lacy had reason to call his son to come get him. Based on the evidence linking the Defendant currency to drugs, therefore, and the inconsistencies between the testimony of Lacy and Strickland, particularly as to the time frame of the events of July 16, 2004, and the places where Lacy hid his money, and the Court's finding that Ms. Strickland was the more credible witness, the Court concludes that Lacy has failed to demonstrate that he is the owner of the $4,790.00.

THEREFORE, the Court concludes that judgment shall be entered in favor of the United States of America. The Defendant Four Thousand Seven Hundred Ninety Dollars ($4,790.00) will be forfeited to the United States for disposition according to law.

IT IS THEREFORE SO ORDERED.

ENTER: February 15, 2006.

    FOR THE COURT:

                                       s/ Jeanne E. Scott
                                       JEANNE E. SCOTT
                                       UNITED STATES DISTRICT JUDGE